1  **McGLINCHEY STAFFORD**
Adam S. Hamburg (SBN 247127)
2  ahamburg@mcglinchey.com
18201 Von Karman Ave., Suite 350
3  Irvine, California 92612
Telephone:    (949) 381-5900
4  Facsimile:    (949) 271-4040

5

6  **McGLINCHEY STAFFORD**
Christopher Bottcher (Admitted PHV)
7  cbottcher@mcglinchey.com
505 20th Street North, Suite 800
8  Birmingham, Alabama 35203
Telephone:    (205) 725-6400
9  Facsimile:    (205) 278-6904

10 Attorneys for *Plaintiff* **LINDE, LLC**

11           **UNITED STATES DISTRICT COURT**

12           **EASTERN DISTRICT OF CALIFORNIA**

13 LINDE, LLC,                          Case No.:  1:16-CV-00527-DAD-EPG

14           Plaintiff,                 Assigned to the Hon. Dale A. Drozd
                                        Magistrate Judge Erica P. Grosjean
15    v.
                                        **PLAINTIFF AND COUNTER-**
16 VALLEY PROTEIN, LLC, and DOES 1 to 10  **DEFENDANT LINDE LLC'S NOTICE OF**
                                        **MOTION AND MOTION FOR SUMMARY**
17           Defendant.                 **JUDGMENT OR, IN THE ALTERNATIVE,**
                                        **PARTIAL SUMMARY JUDGMENT;**
18 _____      **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES**
19 VALLEY PROTEIN, LLC,
                                        <u>Hearing</u>:
20           Counterclaimant,           **Date:         September 18, 2018**
                                        **Time:         9:30 a.m.**
21    v.                                **Location:     United States Courthouse**
                                        **               2500 Tulare Street**
22 LINDE, LLC,                          **               Courtroom 5**
                                        **               Fresno, CA 93721**
23           Counter-defendant.
                                        <u>Filed Concurrently With</u>:
24 _____      Declarations of Mike Iannelli and Adam S.
                                        Hamburg; Separate Statement of Undisputed
25                                       Facts

26                                       Action Filed:     April 14, 2016
                                        Trial Date:       February 26, 2019
27

28                          1

**TO ALL INTERESTED PARTIES**:

**PLEASE TAKE NOTICE** that on **September 18, 2018, at 9:30 a.m**., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States Courthouse, located at 2500 Tulare Street, Fresno, CA 93721, *Plaintiff and Counter-Defendant* LINDE, LLC ("Linde") will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 56, to enter summary judgment in favor of Linde and against *Defendant and Counterclaimant* VALLEY PROTEIN, LLC ("Valley Protein"). Alternatively, Linde moves this Court for an order granting partial summary judgment on the following issues:

**Issue No. 1:**

Linde's first cause of action for Breach of Contract has merit and must be adjudged in favor of Linde and against Valley Protein, as there are no viable affirmative defenses thereto.  Linde is entitled to damages on the first cause of action in the principal sum of $963,084.00, plus accrued interest, attorney's fees and costs.

**Issue No. 2:**

Linde's second cause of action for Breach of the Implied Covenant of Good Faith and Fair Dealing has merit and must be adjudged in favor of Linde and against Valley Protein, as there are no viable affirmative defenses thereto.  Linde is entitled to damages on the second cause of action in the principal sum of $963,084.00, plus accrued interest, attorney's fees and costs.

**Issue No. 3:**

Linde's third cause of action for Account Stated has merit and must be adjudged in favor of Linde and against Valley Protein, as there are no viable affirmative defenses thereto.  Linde is entitled to damages on the third cause of action in the principal sum of $38,963.89, plus accrued interest.

**Issue No. 4:**

Linde's fourth cause of action for Goods and Services Rendered has merit and must be adjudged in favor of Linde and against Valley Protein, as there are no viable affirmative defenses

thereto.  Linde is entitled to damages on the third cause of action in the principal sum of $38,963.89, plus accrued interest.

**Issue No. 5:** Valley Protein's counterclaim for breach of contract fails because: (a) the claim is time-barred; and (b) Linde did not breach any contract with Valley Protein.

**Issue No. 6:** Valley Protein's counterclaim for breach of the covenant of good faith and fair dealing fails because: (a) the claim is time-barred; and (b) Linde did not breach any contract with Valley Protein.

**Issue No. 7:** Valley Protein's counterclaim for fraud - intentional misrepresentation fails because: (a) the claim is time-barred; (b) Linde did not make any representation to Valley Protein that was false; and (c) Valley Protein cannot establish that it justifiably relied on any representation by Linde to its detriment.

**Issue No. 8:** Valley Protein's counterclaim for negligent misrepresentation fails because: (a) the claim is time-barred; (b) Linde did not make any representation to Valley Protein that was false; and (c) Valley Protein cannot establish that it justifiably relied on any representation by Linde to its detriment.

**Issue No. 9:** Valley Protein's counterclaim for unfair competition - injunctive relief pursuant to California Business and Professions Code section 17200, *et seq*. fails because Valley Protein cannot establish that Linde engaged in any unlawful, unfair, or fraudulent conduct.

As set forth more fully in the accompanying Memorandum of Points and Authorities (the "Memorandum"), this motion is made on the ground that there are no genuine issues as to any material fact in this action and that Linde is entitled to judgment as a matter of law.

This motion is based on the attached Memorandum, the declarations filed concurrently herewith, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented by the parties at the hearing.

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1172363.1

1

**CERTIFICATION REGARDING MEET AND CONFER EFFORTS**

2

   Counsel for Linde contacted counsel for Valley Protein via email on June 15, 2018, July 27,

3

2018, and August 2, 2018, in an effort to meet and confer with Valley Protein's counsel regarding

4

the issues raised in the Motion for Summary Judgment.  Counsel for Linde did not receive a

5

response to its email correspondence dated June 15, 2018 or July 27, 2018.  On August 6, 2018,

6

counsel for Valley Protein responded to the Linde's counsel's email dated August 2, 2018 and

7

advised that he would do his best to get working on a response to the issues raised in the meet and

8

confer correspondence; however, Linde's deadline to file the subject Motion is August 7, 2018.  On

9

or about July 15, 2018 and August 2, 2018, Counsel for Linde also placed telephone calls to Valley

10

Protein's counsel in order to meet and confer regarding the issues raised in the Motion for Summary

11

Judgment.  Counsel for Valley Protein was not available and Linde's counsel left voice messages for

12

Valley Protein's counsel requesting a return phone call in order to complete the meet and confer

13

process.  Counsel for Linde did not receive any telephone calls from Valley Protein's counsel in

14

response to these telephone calls.

15

16

DATED:  August 7, 2018                **McGLINCHEY STAFFORD**

17

18

By:____/s/ Adam S. Hamburg_____
      ADAM S. HAMBURG
      CHRISTOPHER BOTTCHER
      Attorneys for Plaintiff **LINDE, LLC**

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT**

1172363.1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

      A.    LINDE AND VALLEY PROTEIN ENTER INTO THE 2011 AGREEMENT. ..........2

      B.    VALLEY PROTEIN'S PRODUCTION SIGNIFICANTLY INCREASED
           AFTER ENTERING IN THE 2011 AGREEMENT. ........................................3

      C.    VALLEY PROTEIN ENTERS INTO THE 2014 AGREEMENT DESPITE
           HAVING CONCERNS REGARDING THE PROPOSED FREEZING
           EQUIPMENT. ........................................................................................3

      D.    LINDE AGREES TO VALLEY PROTEIN'S REQUEST TO RESCIND THE
           2014 RENTAL AGREEMENT. ..................................................................5

      E.    DESPITE ENTERING INTO THE 2014 AGREEMENT WITH LINDE,
           VALLEY PROTEIN EXECUTED A CONTRACT WITH AIR LIQUIDE TO
           OBTAIN CO2. .........................................................................................6

      F.    LINDE REIMBURSES VALLEY PROTEIN FOR SURCHARGES FOR
           THE DELIVERY OF CO2 FROM PIXLEY, CALIFORNIA. .....................6

      G.    LINDE HAS INCURRED DAMAGES AS A RESULT OF VALLEY
           PROTEIN'S CONDUCT ...........................................................................7

III.    LEGAL STANDARD ............................................................................................7

IV.     ANALYSIS .............................................................................................................8

      A.    LINDE IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF
           CONTRACT CLAIM. ...............................................................................8

           1.    Linde Entered Into A Valid And Enforceable Contract With Valley
                 Protein. ............................................................................................8

           2.    Linde Has Fully Performed Its Obligations Under the Terms and
                 Conditions of the 2014 Agreement. ..................................................9

           3.    Valley Protein Breached The 2014 Agreement. .................................9

           4.    Linde Has Been Damaged As A Result of Valley Protein's Breach of
                 the 2014 Agreement. ........................................................................10

      B.    LINDE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE
           ISSUE OF LIABILITY UNDER ITS BREACH OF CONTRACT CLAIM. ............10

      C.    LINDE IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF
           THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
           CLAIM. .................................................................................................11

      D.    NO TRIABLE ISSUES OF MATERIAL FACT EXIST AS TO LINDE'S
           CLAIM FOR ACCOUNT STATED. ...........................................................12

i

**TABLE OF CONTENTS**

1172363.1

E.      NO TRIABLE ISSUES OF MATERIAL FACT EXIST AS TO LINDE'S
        CLAIM FOR GOODS AND SERVICES RENDERED. ...........................................13

F.      LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY
        PROTEIN'S COUNTERCLAIM FOR BREACH OF CONTRACT.........................14

        1.      The Counterclaim is Time-Barred. .................................................................14

        2.      The 2014 Agreement Superseded the 2011 Agreement. ..................................16

        3.      No Breach or Damages ....................................................................................17

G.      LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY
        PROTEIN'S COUNTERCLAIM FOR BREACH OF THE IMPLIED
        COVENANT OF GOOD FAITH AND FAIR DEALING..........................................17

H.      LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY
        PROTEIN'S COUNTERCLAIMS FOR FRAUD/INTENTIONAL
        MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION ...............19

        1.      Valley Protein's Fraud-Based Counterclaims are Time-Barred .....................20

        2.      Valley Protein Cannot Establish the Elements of its Fraud-Based
                Counterclaims ..................................................................................................20

        3.      Valley Protein's Fraud-Based Counterclaims are Barred by the
                Economic Loss Rule. .......................................................................................22

I.      LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY
        PROTEIN'S COUNTERCLAIM FOR INJUNCTIVE RELIEF AND
        RESTITUTION PURSUANT TO CALIFORNIA BUSINESS AND
        PROFESSIONS CODE SECTIONS 17200, *ET SEQ*. .................................................22

        1.      The Counterclaim is Time-Barred. .................................................................23

        2.      No Unlawful, Unfair, or Fraudulent Conduct..................................................23

        3.      No Entitlement to Any Remedy.......................................................................24

V.      CONCLUSION....................................................................................................................25

**TABLE OF CONTENTS**

1172363.1

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................. 7, 8

*Balasanyan v. Nordstrom, Inc.*,
294 F.R.D. 550 (S.D.Cal. 2013) .............................................................. 25

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ............................................................. 24, 25

*Beal Bank, SSB v. Pittorino*,
177 F3d 65 (1st Cir. 1999) ....................................................................... 10

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987) .................................................................... 8

*California Sportfishing Protection Alliance v. Diablo Grande, Inc.*,
209 F.Supp.2d 1059 (E.D.Cal. 2002) ........................................................ 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................... 7

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) ................................................. 24, 25

*Guerrero v. Halliburton Energy Servs., Inc.*,
231 F. Supp. 3d 797 (E.D. Cal. 2017) ..................................................... 24

*Lee v. Am. Nat'l Ins. Co.*,
260 F.3d 997 (9th Cir.2001) ..................................................................... 24

*Marsu B.V. v. Walt Disney Co.*,
185 F.3d 932 (9th Cir. 1999) .................................................................... 18

*Trevino v. City of Bakersfield*,
2016 WL 1090307 (E.D. Cal. 2016) .......................................................... 7

*Triton Energy Corp. Square D Co.*,
68 F.3d 1216 (9th Cir. 1995) ...................................................................... 7

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*,
860 F.Supp. 1448 (CD Cal. 1993) ............................................................ 10

### STATE CASES

*Aas v. Superior Court*,
24 Cal.4th 627 (2000) ............................................................................... 22

*Alexander v. Angel*,
37 Cal.2d 856 (1951) ................................................................................ 16

iii

**TABLE OF AUTHORITIES**

*Allen v. Powell,*
     248 Cal.App.2d 502 (1967) ................................................................................. 13

*Alliance Mortgage Co., v. Rothwell,*
     10 Cal.4th 1226 (1995) ....................................................................................... 22

*Beeson v. Schloss,*
     183 Cal. 618, (1920) ..................................................................................... 14, 15

*Berryman v. Merit Prop. Mgmt., Inc.,*
     152 Cal.App.4th 1544 (2007) ............................................................................. 23

*Buckland v. Threshold Enterprises, Ltd.,*
     155 Cal.App.4th 798 (2007) ............................................................................... 23

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
     222 Cal.App.3d 1371 (1990) ......................................................................... 12, 18

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,*
     2 Cal.4th 342 (1992) .......................................................................................... 17

*Cel–Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.,*
     20 Cal.4th 163 (1999) ........................................................................................ 22

*Daniels v. Select Portfolio Servicing, Inc.,*
     246 Cal. App. 4th 1150 (2016) ........................................................................... 25

*Daugherty v. Am. Honda Motor Co.,*
     144 Cal.App.4th 824 (2006) ............................................................................... 23

*Durell v. Sharp Healthcare,*
     183 Cal.App.4th 1350 (2010) ............................................................................. 11

*Exxon Corp. v. Superior Court,*
     51 Cal.App.4th 1672 (1997) ............................................................................... 18

*Feitelberg v. Credit Suisse First Boston, LLC,*
     134 Cal.App.4th 997 (2005) ............................................................................... 25

*Ferro v. Citizens Nat. Trust & Savings Bank,*
     44 Cal.2d 401 (1955) ......................................................................................... 13

*First Commercial Mortgage Co. v. Reece,*
     89 Cal.App.4th 731 (2001) .............................................................................. 8, 14

*Fox v. Pollack,*
     181 Cal.App.3d 954 (1986) ................................................................................ 19

*Frazier v. Metropolitan Life Ins. Co.,*
     169 Cal.App.3d 90 (1985) .................................................................................. 18

*Gardner v. Watson,*
     170 Cal. 570 (1915) ........................................................................................... 12

iv

**TABLE OF AUTHORITIES**

*Gleason v. Klamer*,
   103 Cal.App.3d 782 (1980) .................................................................................. 12

*Greenwich S.F., LLC v. Wong*,
   190 Cal.App.4th 739 (2010) ................................................................................. 10

*Grupe v. Glick*,
   (1945) 26 Cal.2d 680 (1945) ................................................................................ 10

*H. Russell Taylor's Fire Protection Service, Inc. v. Coca Cola Bottling Corp.*,
   99 Cal.App.3d 711 (1979) .................................................................................... 12

*Hambrecht & Quist Venture Partners v. American Medical Int'l, Inc.*,
   38 Cal.App.4th 1532, (1995) ............................................................................... 14

*Harm v. Frasher*,
   181 Cal.App.2d 405 (1960) .................................................................................. 12

*Hayman v. Sitmar Cruises, Inc.*,
   14 Cal.App.4th 1499 (1993) ................................................................................ 14

*Krantz v. BT Visual Images*,
   89 Cal.App.4th 164 (2001) .................................................................................. 23

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) ................................................................................ 23

*Levy v. State Farm Mut. Auto. Ins. Co.*,
   150 Cal.App.4th 1 (2007) ...................................................................................... 9

*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.*,
   34 Cal.4th 960 (2004) ..................................................................................... 10, 11

*Lewis v. Hopper*,
   140 Cal.App.2d 365 (1956) .................................................................................. 14

*Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*,
   17 Cal.App.4th 432 (1993) .................................................................................. 18

*Los Angeles Gas & Elec. Co. v. Amalgamated Oil Co.*,
   156 Cal. 776 (1909) ............................................................................................... 9

*Maggio Inc. v. Neal*,
   196 Cal.App.3d 745 (1987) .................................................................................. 12

*Nein v. HostPro, Inc.*,
   174 Cal.App.4th 833 (2009) ................................................................................ 18

*Nesson v. Northern Inyo County Local Hosp. Dist.*,
   204 Cal.App.4th 65 (2012) .................................................................................... 9

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
   157 Cal.App.4th 835 (2007) ................................................................................ 19

v

**TABLE OF AUTHORITIES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Pasadena Live, LLC v. City of Pasadena*,
   114 Cal.App.4th 1089 (2004) ............................................................................. 18

*Racine & Laramie, Ltd. v. Department of Parks & Recreation*,
   11 Cal.App.4th 1026 (1992) .......................................................................... 11, 18

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal.4th 979 (2004) ................................................................................... 19, 22

*Roth v. Malson*,
   67 Cal.App.4th 552 (1998) ................................................................................... 8

*Sargon Enterprises, Inc. v. Univ. of S. Cal.*,
   55 Cal. 4th 747, (2012) ....................................................................................... 10

*Scripps Clinic v. Superior Court*,
   108 Cal.App.4th 917 (2003) .......................................................................... 23, 24

*Smith v. City & Cnty. of San Francisco*,
   225 Cal.App.3d 38 (1990) ................................................................................... 18

*Sterling v. Gregory*,
   149 Cal. 117 (1906) .............................................................................................. 9

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
   2 Cal.App.4th 153 (1991) ................................................................................... 23

*Tebbets v. Fidelity and Casualty Co.*,
   155 Cal. 137 (1909) ............................................................................................ 15

*Trafton v. Youngblood*,
   69 Cal.2d 17 (1968) ............................................................................................ 12

*Utility Audit Co. v. City of Los Angeles*,
   112 Cal.App.4th 950 (2003) ............................................................................... 13

*Wilhelm v. Pray, Price, Williams & Russell*,
   186 Cal.App.3d 1324 (1986) ........................................................... 19, 20, 21, 22

*Zalkind v. Ceradyne, Inc.*,
   194 Cal.App.4th 1010 (2011) ............................................................................. 15

*Zinn v. Fred R. Bright Co.*,
   271 Cal.App.2d 597 (1969) ........................................................................... 12, 13

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................... 22, 23

Cal. Bus. & Prof. Code § 17203 ......................................................................... 25

Cal. Bus. & Prof. Code § 17208 ......................................................................... 23

Cal. Civ. Code § 1439 ........................................................................................... 9

vi

Cal. Civ. Code § 1530............................................................................................... 16

Cal. Civ. Code §  3301.............................................................................................. 10

Cal. Code Civ. Proc. § 337 ................................................................................. 15, 16

Cal. Code Civ. Proc. § 337(1).................................................................................. 18

Cal. Code Civ. Proc. § 338(d).................................................................................. 20

**FEDERAL RULES**

Fed. R. Civ. P. 56 .................................................................................................. 2, 7

Fed. R. Civ. P. 56(a) ............................................................................................. 7, 10

Fed. R. Civ. P. 56(c) .................................................................................................. 7

Fed R. Civ. P. 56(g) ................................................................................................ 10

**Other Authorities**

2 Witkin, Cal. Procedure, Pleading § 266, p. 1242.......................................... 16

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 14-A....................... 13

vii

**TABLE OF AUTHORITIES**

1172363.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case presents a straightforward breach of contract claim. It is uncontroverted that in November 2014, Linde and Valley Protein entered into a contract whereby Valley Protein agreed to purchase all of its carbon dioxide ("$CO_2$") requirements for its food processing plant from Linde for a period of five (5) years.  Despite the express term of the 2014 contract, Valley Protein attempted to terminate its contract with Linde in January of 2015. Linde rejected Valley Protein's untimely termination notice, and reminded Valley Protein of its contractual obligations to purchase all of its $CO_2$ requirements from Linde until November 2019. Thereafter, Valley Protein continued to purchase its $CO_2$ requirements from Linde through 2015. It is undisputed that in February 2016, Valley Protein breached its contract with Linde when it ceased purchasing its $CO_2$ from Linde and began purchasing its $CO_2$ requirements from Linde's competitor, Air Liquide.

As a result of Valley Protein's breach, Linde has incurred damages in an amount no less than $963,084.00. Additionally, at the time Valley Protein terminated its contract with Linde, its account had an unpaid balance of $38,963.89, which currently remains due and owing to Linde. As discussed herein, there are no triable issues of fact as to any of the claims asserted by Linde against Valley Protein, and as such, Linde is entitled to summary judgment as to each and every claim alleged in its Complaint.

Additionally, in a transparent attempt to harass and annoy Linde, Valley Protein has filed a Counterclaim, which asserts various breach of contract and fraud based claims. As discussed more thoroughly below, each and every one of Valley Protein's claims lack merit. Specifically, the uncontroverted facts of this matter establish that Linde did not breach any terms or conditions of any agreement between itself and Valley Protein, nor did any Linde representative ever make any misrepresentation of fact to Valley Protein in connection with its agreements relating to the equipment or $CO_2$ it supplied to Valley Protein. Based on the foregoing, and as discussed below, each and every cause of action asserted against Linde is fatally flawed and completely unmeritorious. Principally, not only is each claim substantively defective, but all of Valley Protein's counterclaims are also barred by the applicable statute of limitations. For the reasons set forth herein,

1

Linde respectively requests that the Court grant its Motion for Summary Judgment in its entirety, and enter judgment in favor of Linde and against Valley Protein as to the claims contained in Linde's Complaint and Valley Protein's Counterclaim.

## II.    STATEMENT OF FACTS

### A.    LINDE AND VALLEY PROTEIN ENTER INTO THE 2011 AGREEMENT.

On January 27, 2011, Linde and Valley Protein entered into a Product Supply Agreement (the "2011 Agreement"), wherein Valley Protein agreed to purchase from Linde its requirements for $CO_2$ for its plant located at 1828 E. Hedges Avenue, Fresno, California 93703 (the "Plant"). The 2011 Agreement provides, in relevant part:

> 9.    **Warranty, Sole Remedies, and Limitation of Damages.**
> …
> (e)    Statute of Limitations. A Party must commence an action for a breach of contract within one year after the action has accrued.

(Linde's Separate Statement of Undisputed Material Fact ("UMF"), No. 1.)

The 2011 Agreement also contained an Application Equipment, Ancillary Equipment, and Services Term Sheet, wherein Valley Protein agreed to lease a Cryoline (Cryowave) Tunnel 48-30 (the "2011 Freezer") from Linde (the "2011 Rental Agreement"). In addition, the 2011 Agreement contained an Application Equipment, Ancillary Equipment, and Services Rider (the "2011 Equipment Rider"), which provides, in pertinent part:

> 4.    **Obligations and Rights Regarding Equipment**.
> …
> (b)    [Valley Protein]'s Obligations. In addition to [Valley Protein]'s obligations under paragraph 12 of the [2011 Agreement] with respect to the [2011 Freezer], [Valley Protein]:
> …
> (v)    shall keep the [2011 Freezer] clean at all times, and, regardless of sub-paragraph 12(c)(5) of the [2011 Agreement], maintain the [2011 Freezer] in a good and fully functional condition, in accordance with any written instructions provided by Linde…
> …
> 6.    **Responsibility for Use**. [Valley Protein] is solely responsible for determining the suitability, compatibility, and use of the [2011 Freezer]…

(UMF No. 2.)

At no time prior to, or concurrent with, the execution of the 2011 Agreement, did Linde ever make any representations to Valley Protein regarding the suitability, quality or reliability of the 2011

Freezer. (UMF No. 3.) Further, contrary to the allegations contained in Valley Protein's Counterclaim, Linde's representative Michael Beckman was not involved in any negotiations with Valley Protein prior to the parties entering into the 2011 Agreement, nor did Mr. Beckman ever make any representations to Valley Protein or Mr. Coyle regarding the 2011 Freezer or the location of where Linde would be obtaining the CO2 that it would be supplying to Valley Protein. In fact, Mr. Coyle is not aware of any individual named Michael Beckman who was employed with Linde. At the time the parties entered into the 2011 Agreement, Mr. Coyle further concedes that Linde made accurate representations regarding the capability of the 2011 Freezer. (UMF No. 4.)

Moreover, at all times during the term of the 2011 Agreement, Linde fully complied with all of its obligations under the terms and conditions of the agreement, and at no time during the term of the 2011 Agreement did Valley Protein ever notify Linde that it had failed to comply with any obligation it owed to Valley Protein under the terms and conditions of the 2011 Agreement. (UMF No. 5.)

**B.**     **VALLEY PROTEIN'S PRODUCTION SIGNIFICANTLY INCREASED AFTER ENTERING IN THE 2011 AGREEMENT.**

By early 2012, Valley Protein realized that it was not meeting its target conversion rates in connection with the 2011 Freezer. (UMF No. 6.) Additionally, by October 1, 2012, Valley Protein's production increased due to additional business it acquired. Although Valley Protein's demand increased at that time, Valley Protein did not lose customers due to any production issue, nor was it required to rent additional equipment to meet the demand. (UMF No. 7.)

**C.**     **VALLEY PROTEIN ENTERS INTO THE 2014 AGREEMENT DESPITE HAVING CONCERNS REGARDING THE PROPOSED FREEZING EQUIPMENT.**

After Valley Protein was awarded a contract with Safeway in September of 2014, Mr. Coyle contacted Linde to explore options for improving Valley Protein's freezing operations. In response to Valley Protein's request, Linde asked Valley Protein to complete a questionnaire regarding Valley Protein's production requirements. (UMF No. 8.) Based on Valley Protein's questionnaire responses, Linde thereafter provided Valley Protein with a proposal for new freezing equipment in October of

3

1   2014. However, Mr. Coyle conceded that he did not covey to Linde the fact that Valley Protein

2   needed equipment that could process 5,000 pounds of poultry per hour until after November 5, 2014.

3   (UMF No. 9.)

4          Concurrently with the submission of Linde's proposal, Linde's competitor, Air Liquide,

5   submitted a proposal to Valley Protein for freezing equipment that was significantly different in size

6   and scope from the equipment proposed by Linde. Due to the differences in the proposals, Mr. Coyle

7   contacted Danny Silveira at West Coast Cryo to obtain a second opinion regarding the proposed

8   freezing equipment. However, Mr. Coyle never received a response from Mr. Silveira regarding his

9   inquiry and took no further action to address his concerns. (UMF No. 10.)

10         Despite Valley Protein's concerns regarding Linde's proposal, Valley Protein nevertheless

11  entered into a new Product Supply Agreement (the "2014 Agreement") with Linde, which was

12  effective November 1, 2014. The 2014 Agreement superseded the 2011 Agreement. The 2014

13  Agreement provides, in relevant part:

14         9.      **Warranty, Sole Remedies, and Limitation of Damages.**
           …
15         (e)     Statute of Limitations. A Party must commence an  action  for  a  breach  of
                   contract within one year after the      action has accrued.
16

17         15.     General Provisions.
           …
18         (b)     Entire Agreement.  Each Term Sheet, in conjunction with the terms specified
                   in this document and the related Riders: (1) constitutes a separate contract
19                 between the Parties; (2) constitutes all of the terms of the contract between the
                   Parties regarding its subject matter; and (3) supersedes and terminates all
20                 previous  agreements  between  the  Parties  regarding  this  agreement's
                   subject matter.  Any term contained in a delivery document used by Linde, or
21                 a purchase order, confirmation, or acknowledgement used by Valley Protein,
                   that conflicts with, is different from, or is additional to, the terms of this
22                 agreement is not part of the contract between the parties.

23  (UMF No. 11.)

24         Pursuant to the 2014 Agreement and the Bulk Term Sheet, Valley Protein agreed to purchase

25  from Linde its requirements for CO2 the Plant. In addition, the Bulk Term Sheet authorized Linde to

26  charge Valley Protein a fuel surcharge for delivery of the CO2 gas. (UMF No. 12.) The 2014

27  Agreement also contained an Application Equipment, Ancillary Equipment and Services Term

28  Sheet, wherein Valley Protein agreed to lease a Spiral Freezer 20-175S (the "2014 Freezer") from

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

1172363.1

Linde (the "2014 Rental Agreement"). The 2014 Agreement also contained an Application Equipment, Ancillary Equipment, and Services Rider (the "2014 Equipment Rider") which provides, in pertinent part:

> 4.    **Obligations and Rights Regarding Equipment**.
> …
> (b)    [Valley Protein]'s Obligations. In addition to [Valley Protein]'s obligations under paragraph 12 of the [2014 Agreement] with respect to the [2014 Freezer], [Valley Protein]:
> …
> (v)    shall keep the [2014 Freezer] clean at all times, and, regardless of sub-paragraph 12(c)(5) of the [2014 Agreement], maintain the [2014 Freezer] in a good and fully functional condition, in accordance with any written instructions provided by Linde…
> …
> 6.    **Responsibility for Use**. [Valley Protein] is solely responsible for determining the suitability, compatibility, and use of the [2014] Freezer…

(UMF No. 13.)

### D.    LINDE AGREES TO VALLEY PROTEIN'S REQUEST TO RESCIND THE 2014 RENTAL AGREEMENT.

On December 1, 2014, Mr. Coyle, sent an email to Mike Iannelli of Linde stating, in pertinent part, "I'd like to rescind the contract we signed previously requesting an extension of the contract date and the new equipment, the [2014 Freezer]." (UMF No. 14.) While Valley Protein did not inform Linde that the 2014 Freezer needed to process 5,000 lbs. of poultry an hour until after it executed the 2014 Agreement, Mr. Iannelli confirmed Linde's agreement to rescind the 2014 Rental Agreement via email to Mr. Coyle on December 1, 2014. As set forth in Mr. Iannelli' s email dated December 1, 2014, Mr. Iannelli expressly advised Mr. Coyle that Linde did not accept Valley Protein's request to rescind the 2014 Agreement. (UMF No. 15.)

Furthermore, although it is Valley Protein's position that the 2011 Agreement was in force and effect until the end of January of 2016, Valley Protein does not contend that Linde breached the 2011 Agreement. Notably, during Mr. Coyle's deposition, Mr. Coyle has asked whether it was his position that Linde breached the 2011 Agreement. In response to this question, Mr. Coyle stated "No." Mr. Coyle further conceded that that it was Valley Protein's obligation to maintain the equipment. (UMF No. 16.)

**E.**    **DESPITE ENTERING INTO THE 2014 AGREEMENT WITH LINDE, VALLEY PROTEIN EXECUTED A CONTRACT WITH AIR LIQUIDE TO OBTAIN CO2.**

On December 12, 2014, a mere month after Valley Protein executed the 2014 Agreement with Linde, Valley Protein entered into an Equipment Lease Agreement with Air Liquide for a Spiral Freezer Model MB1-30-0550-09. Concurrent with the execution of the Equipment Lease Agreement. Valley Protein also executed a Product Supply Agreement with Air Liquide to obtain CO2 from Air Liquide during the term of Linde's 2014 Agreement. (UMF No. 17.)

On January 25, 2015, Mr. Coyle sent a Termination Notice to Mr. Iannelli, wherein Mr. Coyle notified Linde that Valley Protein would not be renewing the 2011 Product Supply Agreement. (UMF No. 18.) In response to Mr. Coyle's January 25, 2015 Termination Notice, Mr. Iannelli advised Mr. Coyle that Linde did not accept Valley Protein's Termination Notice because the 2014 Agreement superseded the 2011 Agreement, and as such, Valley Protein was obligated to obtain its CO2 from Linde for the term of 5 years as specified in the 2014 Agreement. (UMF No. 19.) Notwithstanding the foregoing, on February 1, 2016, Valley Protein notified Linde that it would no longer be purchasing its CO2 from Linde. (UMF No. 20.)

Between November 1, 2014 and February 1, 2016, Linde fully performed all of its obligations owed to Valley Protein under the terms and conditions of the 2014 Agreement. Specifically, Linde provided Valley Protein with all of its CO2 requirements that was necessary for the operation of Valley Protein's business. (UMF No. 21.)

**F.**    **LINDE REIMBURSES VALLEY PROTEIN FOR SURCHARGES FOR THE DELIVERY OF CO2 FROM PIXLEY, CALIFORNIA.**

Between mid-2014 and the beginning of 2016, Linde obtained the CO2 delivered to the Plant from its competitor's plant in Pixley, California, as opposed to Linde's plant in Richmond, California. Due to an oversight, there were instances where Linde billed Valley Protein a fuel surcharge based on the transportation of the gas from Richmond to the Plant. Mr. Coyle acknowledged that any omission of this information was not intentional, but merely an oversight on

1    the part of Linde. However, Linde has subsequently reimbursed Valley Protein for the fuel

2    surcharge. (UMF No. 22.)

3           **G.**     **LINDE HAS INCURRED DAMAGES AS A RESULT OF VALLEY**

4                **PROTEIN'S CONDUCT.**

5         As a result of Valley Protein's breach of the 2014 Agreement, Linde has incurred damages in

6    the form of lost profits. The principal amount of Linde's lost profits is $963,084.00. (UMF No. 23.)

7    Likewise, at the time Valley Protein breached the 2014 Agreement, Valley Protein had a past due

8    balance of $38,963.89 for CO2 that had been delivered by Linde to Valley Protein. To date, this

9    amount remains unpaid, due and owing. (UMF No. 24.)

10   **III.**    **LEGAL STANDARD**

11         Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary

12   judgment on all or part of a claim. Fed. R. Civ. P. 56(a). Summary judgment is appropriate if "there

13   is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

14   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v.*

15   *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In addition, Rule 56 allows the court to grant

16   summary adjudication, or partial summary judgment, when there is no genuine issue of material fact

17   as to a particular claim or portion of that claim." *Trevino v. City of Bakersfield*, 2016 WL 1090307,

18   at *2 (E.D. Cal. 2016) (citations omitted). Summary adjudication may be appropriate on clearly

19   defined issues. *See California Sportfishing Protection Alliance v. Diablo Grande, Inc.*, 209

20   F.Supp.2d 1059, 1065 (E.D.Cal. 2002) (citation omitted). It can be used to narrow issues while

21   allowing the court to retain its power to adjudicate all claims. *See id.*

22         The moving party has the initial burden of demonstrating the absence of a disputed issue of

23   material fact. *See Celotex*, 477 U.S. at 323. Once such a showing has been made, the non-moving

24   party must demonstrate the existence of a genuinely disputed fact by citing "to particular parts of

25   material in the record" or "showing that the materials cited [by the movant] do not establish the

26   absence…of a genuine dispute." Fed. R. Civ. P. 56(c). Importantly, "[t]he mere existence of a

27   scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat a

28   motion for summary judgment. *Triton Energy Corp. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

**MEMORANDUM OF POINTS AND AUTHORITIES**
1172363.1

1995). Moreover, mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude the use of summary judgment. *See California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). Finally, not every disputed factual issue is material in light of the substantive law that governs the case. Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

IV.    **ANALYSIS**

    A.    **LINDE IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM.**

    The elements of a claim for breach of contract under California law are: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *See First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001).  In the present matter, there are no genuine issues of disputed fact regarding any of the essential elements set forth above.

        1.    **Linde Entered Into A Valid And Enforceable Contract With Valley Protein.**

    In California, the existence of a contract is a necessary element to an action based on contract, regardless of whether the plaintiff seeks specific performance or damages for breach of contract.  *See Roth v. Malson*, 67 Cal.App.4th 552, 557 (1998).

    It is uncontroverted that Linde and Valley Protein entered into the 2014 Agreement on November 1, 2014. (UMF Nos. 11-12.) While Valley Protein sought to rescind the 2014 Agreement on December 1, 2014, Linde rejected Valley Protein's request to rescind the 2014 Agreement. (UMF Nos. 14-15.)  Pursuant to the terms of the 2014 Agreement, Linde was required to sell to Valley Protein, and Valley Protein was required to buy exclusively from Linde, all of Valley Protein's $CO_2$ requirements for Valley Protein's business for a period of five (5) years starting on November 1, 2014. (UMF Nos. 11-12.)

**MEMORANDUM OF POINTS AND AUTHORITIES**

1

2. **Linde Has Fully Performed Its Obligations Under the Terms and Conditions of the 2014 Agreement.**

3

In an action for breach of contract, the plaintiff must allege and prove either performance or a valid excuse for nonperformance. *See Nesson v. Northern Inyo County Local Hosp. Dist.*, 204 Cal.App.4th 65, 87 (2012). In order to prove that a plaintiff has performed its obligations, the plaintiff must prove that it was able and offered to fulfill all obligations imposed upon it by the contract. *See* Cal. Civ. Code § 1439.

It is undisputed that Linde fully performed under the terms of the 2014 Agreement. (UMF No. 21.) Specifically, during the operative term of the 2014 Agreement Linde provided Valley Protein with all of its $CO_2$ requirements in connection with the operation of Valley Protein's business. (*Id.*)

3. **Valley Protein Breached The 2014 Agreement.**

The unjustified failure to perform a material promise or covenant, where the contract is entire, is a breach. *Sterling v. Gregory*, 149 Cal. 117, 121 (1906); *Los Angeles Gas & Elec. Co. v. Amalgamated Oil Co.*, 156 Cal. 776, 781 (1909). In California, facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity. *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal.App.4th 1, 5 (2007).

As set forth above, on February 1, 2016, Valley Protein breached the 2014 Agreement when it notified Linde that it would no longer be purchasing its $CO_2$ requirements from Linde and began purchasing its $CO_2$ requirements from Linde's competitor, Air Liquide. (UMF No. 18-20.) Specifically, Valley Protein was contractually obligated to exclusively purchase all of its $CO_2$ from Linde for a period of five (5) years, beginning on November 1, 2014. (UMF Nos. 11-12.) Accordingly, by refusing to purchase its $CO_2$ from Linde and purchasing its $CO_2$ from Air Liquide during the specified term of the agreement, Valley Protein's conduct constitutes an unequivocal breach of the 2014 Agreement.

9

1172363.1

1

2

    4.    **Linde Has Been Damaged As A Result of Valley Protein's Breach of the 2014 Agreement.**

3

4

5

6

7

8

9

10

11

12

Lost profits may be recoverable as damages for breach of a contract. "[T]he general principle [is] that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent." *Grupe v. Glick*,  (1945) 26 Cal.2d 680, 693 (1945). Such damages must "be proven to be certain both as to their occurrence and their extent, albeit not with 'mathematical precision.'" *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.*, 34 Cal.4th 960, 975 (2004). The rule that lost profits must be reasonably certain is a specific application of a more general statutory rule. "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." *California Civil Code* § 3301; see *Greenwich S.F., LLC v. Wong*, 190 Cal.App.4th 739, 760 (2010); *Sargon Enterprises, Inc. v. Univ. of S. Cal.*, 55 Cal. 4th 747, 773–74, (2012).

13

14

15

16

17

As a result of Valley Protein's breach of the 2014 Agreement, Linde has incurred damages for lost profits in the principal amount of $963,084.00.  (UMF No. 23.)  These facts are undisputed and irrefutable.  Accordingly, there are no triable issues of material fact with respect to Linde's first cause of action, and therefore, this issue should be summarily adjudicated in favor of Linde and against Valley Protein.

18

19

    B.    **LINDE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY UNDER ITS BREACH OF CONTRACT CLAIM.**

20

21

22

23

24

25

26

27

28

Upon a showing that there is no genuine dispute of material fact as to a particular claim, the court may grant summary judgment in the party's favor on "each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." Fed R. Civ. P. 56(a) (emphasis added); *see also Beal Bank, SSB v. Pittorino*, 177 F3d 65, 68 (1st Cir. 1999); *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 860 F.Supp. 1448, 1450 (CD Cal. 1993). Specifically, since, Rule 56(a) explicitly provides for summary judgment on "part of each claim or defense," "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case." Fed R. Civ. P. 56(g). These provisions make clear that summary judgment may be requested as to any issue

1    (any "part" of a claim or defense), and that even if summary judgment is denied, the court may enter

2    an order treating certain material facts as established in the case (*i.e.*, a "partial" summary

3    judgment). A common example of a "partial" summary judgment is a judgment on liability only.

4    *See* General Considerations, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 14-A.

5          As discussed above, Linde has adequately established that there are no triable issues of fact

6    as to any of the elements of its breach of contract claim. Specifically, it is undisputed that the parties

7    entered into the 2014 Agreement, which is and was fully enforceable at all times during the term of

8    the Agreement. (UMF Nos. 11-12.) Likewise, it is uncontroverted that Linde fully performed all of

9    its obligations under the terms of the 2014 Agreement, and that Valley Protein breached the

10    Agreement when it failed and refused to purchase its $CO_2$ needs from Linde. (UMF Nos. 18-21.)

11    Further, as a result of Valley Protein's breach, Linde has incurred damages.

12          While Linde anticipates that Valley Protein will argue that Linde's damages are not

13    reasonably certain or ascertainable, as discussed above, Linde is only required to prove that such

14    damages are certain both as to their occurrence and their extent; however Linde does not need to

15    establish the existence of such damages with "mathematical precision." *Lewis Jorge Construction*

16    *Management, Inc.*, 34 Cal.4th at 975. Notwithstanding the foregoing, to the extent that the Court

17    determines that a triable issue of fact exists as to the amount of Linde's damages, Linde requests a

18    Court order granting summary adjudication as to the liability issue on the breach of contract claim.

19          **C.    LINDE IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF**

20              **THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

21              **CLAIM.**

22          "The [implied] covenant of good faith and fair dealing [is] implied by law in every contract."

23    *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1369 (2010). The covenant is read into contracts

24    and functions "'as a supplement to the express contractual covenants, to prevent a contracting party

25    from engaging in conduct which (while not technically transgressing the express covenants)

26    frustrates the other party's rights to the benefits of the contract.'" *Racine & Laramie, Ltd. v.*

27    *Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031-1032 (1992). The covenant also

28    requires each party to do everything the contract presupposes the party will do to accomplish the

1    agreement's purposes. *Harm v. Frasher*, 181 Cal.App.2d 405, 417 (1960). A breach of the implied

2    covenant of good faith is a breach of the contract. *Careau & Co. v. Security Pacific Business Credit,*

3    *Inc*., 222 Cal.App.3d 1371, 1393 (1990).

4         The elements of Linde's claim for breach of the implied covenant of good faith and fair

5    dealing are identical to its breach of contract claim. Accordingly, for the reasons set forth above,

6    Linde is entitled to summary judgment on its second cause of action for breach of the implied

7    covenant of good faith and fair dealing.

8    **D.    NO TRIABLE ISSUES OF MATERIAL FACT EXIST AS TO LINDE'S**

9    **CLAIM FOR ACCOUNT STATED.**

10        The Supreme Court has held, "[a]n account stated is an agreement, based on prior

11   transactions between the parties, that all items of the account are true and that the balance struck is

12   due and owing from one party to the other. [Citations.]" *Trafton v. Youngblood*, 69 Cal.2d 17, 25

13   (1968); *Gardner v. Watson*, 170 Cal. 570, 574-575 (1915); *Maggio Inc. v. Neal*, 196 Cal.App.3d

14   745, 752-753 (1987); *Gleason v. Klamer*, 103 Cal.App.3d 782, 786-787 (1980). In order to establish

15   an account stated, the Court of Appeal has held, "it must appear that at the time of the statement an

16   indebtedness from one party to other existed, that a balance was then struck and agreed to be the

17   correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly

18   promised to pay to the creditor the amount thus determined to be owing." *H. Russell Taylor's Fire*

19   *Protection Service, Inc. v. Coca Cola Bottling Corp.*, 99 Cal.App.3d 711, 726-727 (1979); *accord*

20   *Maggio, Inc.,* 196 Cal.App.3d at 752-753. If a statement is rendered and the debtor fails to object or

21   reply within a reasonable time, the law implies an agreement that the account is correct as rendered.

22   *Id.*; *Zinn v. Fred R. Bright Co.*, 271 Cal.App.2d 597, 600-601 (1969).

23        There is no triable issue of material fact that Valley Protein is indebted to Linde by virtue of

24   its execution of the 2014 Agreement. (UMF Nos. 11-12.) Despite Valley Protein's promise to pay

25   Linde for all of the $CO_2$ it delivered to Valley Protein, it has failed to do so. (UMF No. 24.)

26   Specifically, between the period of January 14, 2016 through February 4, 2016, Linde issued a total

27   of twenty-two (22) invoices to Valley Protein for $CO_2$ that was delivered to Valley Protein totaling

28   $38,963.89. (*Id.*) It is uncontroverted that Linde has made demand on Valley Protein to pay the

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    amounts due and owing, but despite this demand, Valley Protein has failed and refused to pay the

2    amounts due and owing. (*Id.*) In light of the foregoing, Linde is entitled to summary judgment on its

3    claim for account stated in the amount of $38,963.89.

4         **E.    NO TRIABLE ISSUES OF MATERIAL FACT EXIST AS TO LINDE'S**

5              **CLAIM FOR GOODS AND SERVICES RENDERED.**

6         It is well settled in California that if a plaintiff owes no further performance under the

7    contract, and nothing remains to be done thereunder, except the payment of money by the defendant,

8    payment can then be recovered under a complaint by stating a claim for common count. *Ferro v.*

9    *Citizens Nat. Trust & Savings Bank*, 44 Cal.2d 401, 409 (1955). Stated differently, a common count

10   is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum

11   certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such

12   a case that the proof shows the original transaction to be an express contract. *Utility Audit Co. v. City*

13   *of Los Angeles*, 112 Cal.App.4th 950, 958 (2003).

14        Accordingly, in order to establish the cause of action of common count, plaintiff must

15   establish that: (1) defendant became indebted to plaintiff for a certain sum; (2) the indebtedness was

16   based on some form of consideration; and (3) the debt has not been repaid. *Allen v. Powell*, 248

17   Cal.App.2d 502, 510 (1967); 2 Witkin, Cal. Procedure, Pleading § 266, p. 1242.

18        Again, there are no genuine issues with regard to any of the above elements, and as such,

19   Linde's fourth cause of action should be summarily adjudicated in favor of Linde and against Valley

20   Protein.  Specifically, pursuant to the terms of the 2014 Agreement, Valley Protein has become

21   indebted to Linde in the amount of $38,963.89. (UMF Nos. 11-12, 24.) Additionally, it is equally

22   undisputed that Valley Protein's indebtedness was based on some form of consideration, which

23   consisted of Linde's sale of $CO_2$ to Valley Protein, and its actual delivery of $CO_2$ to Valley Protein.

24   (*Id.*) Such conduct constitutes consideration for Valley Protein's indebtedness.

25        Finally, it is uncontroverted that to date, there remains an unpaid principal amount of

26   $38,963.89 that is due and owing by Valley Protein. (UMF No. 24.) Despite Linde's demand, Valley

27   Protein has failed and refused to re-pay any portion of the amount due and owing. (*Id.*) As such, the

28   debt still remains outstanding. Based on the foregoing, there are no genuine issues regarding any of

13

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    the essential elements discussed above. Accordingly, the Court should enter judgment in favor of

2    Linde and against Valley Protein as to Linde's fourth cause of action.

3            **F.**     **LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY**

4                **PROTEIN'S COUNTERCLAIM FOR BREACH OF CONTRACT.**

5          The elements of a claim for breach of contract under California law are: (1) the existence of a

6    contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant;

7    and (4) damages. *See First Commercial Mortgage Co.*, 89 Cal.App.4th at 745. Valley Protein's

8    counterclaim for breach of contract is premised on its contention that Linde: (1) failed to supply and

9    maintain the 2011 Freezer pursuant to the 2011 Agreement; and (2) charged Valley Protein fuel

10   surcharge and delivery fees in excess of what was allowed under the 2011 Agreement. (*See*

11   Counterclaim, ¶ 27.) For the reasons set forth below, Valley Protein's counterclaim lacks merit.

12           **1.**     **The Counterclaim is Time-Barred.**

13         To the extent that this counterclaim is premised on Valley Protein's contention that Linde

14   failed to provide the requisite freezing equipment under the 2011 Agreement, the counterclaim fails

15   because it is barred by the applicable statute of limitations. Specifically, as set forth in Section 9(e)

16   of the 2011 Agreement, the parties expressly agreed that a party must commence an action for

17   breach of contract within one year after the action has accrued. (UMF No. 1.)

18         Under California law, contracting parties may prescribe a period of limitations for the

19   commencement of litigation arising out of the subject matter of the contract, as that subject matter

20   may be broadly or narrowly defined. The contractual limitations period may be shorter or longer

21   than that fixed by otherwise applicable statute and may contain other terms. Such agreements are

22   unobjectionable and fully enforceable if the time period and other requirements are not so

23   unreasonable as to reflect imposition or undue advantage. *See Beeson v. Schloss*, 183 Cal. 618, 622–

24   23, (1920); *Hambrecht & Quist Venture Partners v. American Medical Int'l, Inc.*, 38 Cal.App.4th

25   1532, 1548, (1995); *Hayman v. Sitmar Cruises, Inc*., 14 Cal.App.4th 1499, 1505–06, 18 (1993).

26         While the court in *Lewis v. Hopper*, 140 Cal.App.2d 365, 367 (1956), stated "[C]ontractual

27   stipulations which limit the right to sue to a period shorter than that granted by statute, are not

28   looked upon with favor because they are in derogation of the statutory limitation and they should be

**MEMORANDUM OF POINTS AND AUTHORITIES**

construed with strictness against the party invoking them," the court in *Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1029 (2011) has rejected this position. Specifically, as set forth in *Zalkind*, the court stated that "[l]ong before *Lewis*, the California Supreme Court held, "[i]t is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way. [Citations.]" *Id.* at 1030 (citing *Beeson v. Schloss*, 183 Cal. 618, 622–623, (1920)); *see also Tebbets v. Fidelity and Casualty Co.*, 155 Cal. 137, 139 (1909) (noting that statute of limitations is a personal right that can be waived or shortened). The Court in *Zalkind* further stated that, as an agreement to shorten the statute of limitations does not violate public policy under California Supreme Court authority, the Court did not agree that a contractual provision to shorten the statute of limitations must be "construed with strictness" against the party seeking to enforce the provision, and declined to follow *Lewis*. *Zalkind*, 194 Cal.App.4th at 1030. "Even if we would construe that contract provision with "strictness," we would still enforce it under the Supreme Court authority cited in the prior paragraph." *Id.*

In the present matter, the parties, both of whom are sophisticated business entities, contractually agreed to shorten the statute of limitations on all contract claims to one year from the date the claim accrued. (UMF No. 1.) Since Valley Protein alleges that the purported breach occurred at the inception of the agreement in 2011 (*see* Counterclaim, ¶ 27), Valley Protein was required to bring its claim on or before January 27, 2012. Since Valley Protein failed to do so, its breach of contract claim is time barred. Assuming, *arguendo,* that Valley Protein did not discover the purported breach until 2014 as alleged in the Complaint, it is uncontroverted that Valley Protein was aware of the breach as of September 2014 when it purportedly made demand on Linde to repair or replace the "faulty poultry-freezing equipment." (*See* Counterclaim, ¶ 14.) Accordingly, as of September 2014, Valley Protein's purported breach of contract claim had accrued, and as such, its claim is time-barred under this scenario as well.

To the extent that the Court is inclined not to enforce the contractual statute of limitations, *Code of Civil Procedure* section 337 establishes a four-year period within which to bring a claim for

**MEMORANDUM OF POINTS AND AUTHORITIES**

1  breach of a written contract. *See* Cal. Civ. Pro. Code § 337. Again, since Valley Protein alleges that

2  the purported breach incurred at the inception of the agreement in 2011 (*see* Counterclaim ¶ 27),

3  Valley Protein's breach of contract claim would also be time-barred under California Code of Civil

4  Procedure section 337.

5  2.    **The 2014 Agreement Superseded the 2011 Agreement.**

6  To the extent that Valley Protein's breach of contract counterclaim is premised on purported

7  breaches of the 2011 Agreement, the counterclaim also fails because the 2011 Agreement was

8  superseded by the 2014 Agreement. Indeed, it is well-established under California law that a contract

9  that supersedes an earlier contract is governed by the concept of novation. *See Alexander v. Angel*,

10  37 Cal.2d 856, 860 (1951). "Novation is the substitution of a new obligation for an existing one."

11  Cal. Civ. Code § 1530. Novation may be made in one of three ways: (1) ***by substituting a new***

12  ***obligation between the same parties, with the intent to extinguish the old obligation***; (2) by

13  substituting a new debtor in place of the old one, with the intent to release the latter; or (3) by

14  substituting a new creditor in place of the old one, with the intent to transfer the rights of the latter to

15  the former. *Id*. (emphasis added).

16  Moreover, following a novation, the parties' rights and duties are governed only by the new

17  agreement, and it necessarily follows that the old agreement has been entirely abrogated or

18  extinguished. *Id.* at 863. As a consequence of such novation, the rights and duties of the parties must

19  be governed by the new agreement alone, and "a failure to perform (thereunder) does not, under any

20  theory of rescission or revivor, operate to breathe new life into the dead and extinguished

21  obligation." *Id*.

22  Here, the 2014 Agreement constituted a new obligation, nullifying the 2011 Agreement and

23  creating a new obligation between Valley Protein and Linde with respect to Linde's delivery of $CO_2$

24  related surcharges. (UMF Nos. 11-12.) This new obligation therefore constituted a novation within

25  the meaning of California Civil Code section 1530. Consequently, Valley Protein cannot maintain a

26  breach of contract counterclaim based on alleged breaches of the 2011 Agreement.

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

1172363.1

### 3.    No Breach or Damages

Notwithstanding the foregoing, Valley Protein cannot establish that Linde breached any portion of the 2011 Agreement. Specifically, Valley Protein's President, Bob Coyle expressly testified that Linde did not breach the 2011 Agreement. Notably, during Mr. Coyle's deposition, Mr. Coyle has asked whether it was his position that Linde breached the 2011 Agreement. In response to this question, Mr. Coyle stated "No." (UMF No. 16.) Additionally, while Valley Protein alleges that Linde breached the 2011 Agreement by failing to properly maintain the poultry freezing equipment as it was required to do under the terms of the 2011 Agreement (*see* Counterclaim, ¶ 27), Mr. Coyle conceded that that it was Valley Protein's obligation to maintain the equipment. (UMF No. 16.)

With respect to Valley Protein's contention that Linde failed to furnish Valley Protein with equipment that would properly meet the needs of Valley Protein, it is controverted that Linde's representatives did not make any representations to Valley Protein regarding the capabilities of the 2011 Freezer until after the execution of the 2011 Agreement. (UMF Nos. 3.) In fact, any purported problems with the 2011 Freezer resulted from Valley Protein's failure to provide Linde with the correct specifications as required under Section 6 of the 2011 Equipment Rider. (UMF Nos. 2-4.) Indeed, Valley Protein did not account for the increase in its production demand that occurred after it entered into the 2011 Agreement. (UMF Nos. 6-7.) Nevertheless, Valley Protein admits that it did not lose customers due to any production problems or was required to rent additional equipment in order to meet the increased production demand. (UMF No. 7.) Finally, with respect to the fuel surcharges at issue, the uncontroverted evidence also demonstrates that Linde cured the purported breach by reimbursing and/or crediting Valley Protein for the surcharges. (UMF No. 22.)

Based on the foregoing, Linde is entitled to summary judgment on Valley Protein's counterclaim for breach of contract.

### G.    LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY PROTEIN'S COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

California law implies a covenant of good faith and fair dealing in every contract. *See Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 371 (1992). The

**MEMORANDUM OF POINTS AND AUTHORITIES**

covenant is implied "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights [to] the benefits of the contract." *Marsu B.V. v. Walt Disney Co*., 185 F.3d 932, 938 (9th Cir. 1999) (citing *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal.App.4th 432, 447 (1993)). The prerequisite for any action for breach of the covenant of good faith and fair dealing is the existence of a contractual relationship between the parties. *See Smith v. City & Cnty. of San Francisco*, 225 Cal.App.3d 38, 49 (1990); *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal.App.4th 1026, 1032 (1992) ("There is no obligation to deal fairly or in good faith absent an existing contract.").

Further, it is "well established that an implied covenant cannot create an obligation inconsistent with an express term of the [contract]." *Nein v. HostPro, Inc*., 174 Cal.App.4th 833, 852 (2009) (citing *Exxon Corp. v. Superior Court*, 51 Cal.App.4th 1672, 1688 (1997)). Ultimately, the "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-94 (2004).

Valley Protein's counterclaim for breach of the implied covenant of good faith and fair dealing mirrors the preceding counterclaim for breach of contract. This counterclaim is premised on Valley Protein's allegations that Linde: (1) failed to supply and maintain the 2011 Freezer pursuant to the 2011 Agreement; and (2) charged Valley Protein fuel surcharge and delivery fees in excess of what was allowed under the 2011 Agreement. (*See* Counterclaim, ¶ 34.)

As an initial matter, this counterclaim is time-barred for the reasons stated above. Notably, since the breach of the implied covenant of good faith is a breach of the contract, (*see Careau & Co.*, 222 Cal.App.3d at 1393), it is subject to the contractual one-year statute of limitations.[1] Even if the counterclaim is not time-barred, Valley Protein cannot establish that Linde breached the 2011

---

[1] To the extent that the Court determines that the one-year statute of limitations is not applicable, this claim would also be time-barred under Code of Civil Procedure section 337(1). *See Frazier v. Metropolitan Life Ins. Co*., 169 Cal.App.3d 90, 102 (1985) (noting that claims for breach of the implied covenant of good faith and fair dealing are controlled by the four-year limitations period of California Code of Civil Procedure section 337(1) for actions arising on a written contract).

**MEMORANDUM OF POINTS AND AUTHORITIES**

1172363.1

1    Agreement for the reasons stated above. Consequently, Linde is also entitled to summary judgment

2    on this counterclaim.

3    **H.    LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY**

4    **PROTEIN'S COUNTERCLAIMS FOR FRAUD/INTENTIONAL**

5    **MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION**

6    Under California law, the elements of a claim for fraud or intentional misrepresentation, are:

7    "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of

8    falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5)

9    resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004)

10   (internal quotation omitted). Similarly, the elements for a cause of action for negligent

11   misrepresentation consist of: (1) a misrepresentation of a past or existing material fact; (2) without

12   reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact

13   misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the

14   misrepresentation was directed; and (5) damages. *See Fox v. Pollack*, 181 Cal.App.3d 954, 962

15   (1986).

16   To establish reliance, a party must prove: "(1) that they actually relied on the defendant's

17   misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities*

18   *Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal.App.4th 835, 863 (2007). Justifiable reliance

19   requires proof that "circumstances were such to make it reasonable for [the] plaintiff to accept [the]

20   defendant's statements without an independent inquiry or investigation." *Wilhelm v. Pray, Price,*

21   *Williams & Russell*, 186 Cal.App.3d 1324, 1332 (1986).

22   Valley Protein's counterclaims for fraud/intentional misrepresentation and negligent

23   misrepresentation are premised on its contention that Linde: (1) made false representations regarding

24   the 2011 Freezer in order to induce Valley Protein to enter into the 2011 Agreement; (2) made false

25   representations regarding the source of the $CO_2$ it supplied to the Plant; and (3) made false

26   representations regarding the 2014 Freezer in order to induce Valley Protein to enter into the 2014

27   Agreement. (*See* Counterclaim, ¶¶ 37, 42, 44, 49, 54, 56.) Valley Protein's fraud-based

28   counterclaims fail for various reasons.

**MEMORANDUM OF POINTS AND AUTHORITIES**

1

### 1.    <u>Valley Protein's Fraud-Based Counterclaims are Time-Barred</u>

Section 338(d) of the California Code of Civil Procedure prescribes a three-year statute of limitations for a cause of action for intentional or negligent misrepresentation. *See* Cal. Civ. Proc. Code § 338(d). Here, the alleged misrepresentations concerning the 2011 Freezer occurred before the parties entered into the 2011 Agreement. (*See* Counterclaim, ¶¶ 37, 49.) Moreover, there is no evidence to support Valley Protein's contention that it did not discover the purported misrepresentations until October of 2014. On the contrary, Mr. Coyle admitted that Valley Protein became aware that the 2011 Freezer was not reaching its target production output in early 2012. (UMF No. 6.) Based on this admission, to the extent that Valley Protein's fraud-based counterclaims are premised on misrepresentations relating to the 2011 Freezer, they accrued in early 2012 at the latest. However, this action was not commenced until four years later in 2016. Accordingly, these counterclaims are time-barred. *See* Cal. Civ. Proc. Code § 338(d).

### 2.    <u>Valley Protein Cannot Establish the Elements of its Fraud-Based Counterclaims</u>

Assuming, *arguendo*, that Valley Protein's fraud-related counterclaims are not time-barred, the counterclaims nevertheless fail because Valley Protein cannot establish the necessary elements of these counterclaims. First, Valley Protein cannot establish that Linde made any misrepresentations regarding the 2011 Freezer prior to the parties entering into the 2011 Agreement. Specifically, as alleged in the Counterclaim, Valley Protein contends that "[i]n January of 2011, Linde employee and representative Michael Beckman made numerous specific representations to Valley Protein that the poultry-freezing equipment Linde would and did provide to Linde Valley Protein in connection with the 2011 Agreement was modern, reliable, efficient and would satisfy Valley Protein's production output and poultry freezing needs." (*See* Counterclaim, ¶ 37.) However, contrary to Valley Protein's allegations in the Counterclaim, Mr. Coyle admitted at his deposition that Michael Beckman was not involved in any negotiations with Linde prior to the parties entering into the 2011 Agreement. (UMF No. 4.) In fact, Mr. Coyle is not aware of any individual named Michael Beckman who was employed with Linde. (*Id*.) Moreover, Mr. Coyle testified that Linde made accurate representations

**MEMORANDUM OF POINTS AND AUTHORITIES**

1172363.1

1    regarding the capability of the 2011 Freezer before the parties entered into the 2011 Agreement.

2    (*Id.*)

3         Secondly, while Valley Protein alleges that Michael Beckman and other Linde

4    representatives made misrepresentations regarding the location and source of the CO2 delivered to

5    Valley Protein in January 2011, again, Mr. Coyle testified that Mr. Beckman never made any

6    representations to anyone at Valley Protein and that no one from Linde ever mislead him as to where

7    Linde was actually obtaining the CO2. (UMF No. 4.) Moreover, Valley Protein cannot establish that

8    Linde exhibited an intent to defraud Valley Protein in connection with the fuel surcharges, because

9    in fact, Mr. Coyle acknowledged that any omission of this information was not intentional, but

10    merely an oversight on the part of Linde. (UMF No. 22.) Lastly, the evidence otherwise reflects that

11    Valley Protein was reimbursed for the subject fuel charges, which Valley Protein does not dispute.

12    (*Id.*) As such, Valley Protein cannot establish any damages from the purported misrepresentation.

13         Third, Valley Protein cannot establish that Linde made a misrepresentation regarding the

14    suitability or capacity of the 2014 Freezer or that Valley Protein justifiably relied on any such

15    misrepresentation. To start, Linde's proposal for the 2014 Freezer was based on Valley Protein's

16    responses to a questionnaire regarding its production requirements, and Section 6 of the Equipment

17    Rider specifically provides that Valley Protein "is solely responsible for determining the suitability,

18    compatibility, and use of the [2014 Freezer]." (UMF Nos. 9-10, 13.) Moreover, while Valley Protein

19    alleges that in October 2014, Linde's representative Amanda Guzman represented that the new-

20    poultry freezing equipment would be sufficient to meet Valley Protein's production output of 5,000

21    pounds of poultry per hour, Mr. Coyle conceded that he did not covey the fact that Valley Protein

22    needed equipment that could process 5,000 pounds of poultry per hour until after November 5, 2014,

23    which was after he had already executed the 2014 Agreement. (UMF No. 9, 11.) Accordingly,

24    Valley Protein could not and did not rely on these purported representations in connection with

25    executing the 2014 Agreement because such information was not provided to Linde until after the

26    2014 Agreement was already executed by Valley Protein.

27         More importantly, Valley Protein knowingly entered into the 2014 Agreement despite Mr.

28    Coyle exhibiting concerns regarding the suitability of the 2014 Freezer after receiving a significantly

**MEMORANDUM OF POINTS AND AUTHORITIES**

1172363.1

1    different proposal from Linde's competitor. (UMF No. 10.) In fact, Mr. Coyle admittedly sought a

2    second opinion regarding the proposed equipment, but took no further action when the third party

3    whom he contacted failed to respond to his inquiry. (*Id*.) Consequently, the evidence

4    overwhelmingly reflects that Valley Protein's reliance on any purported statement by Linde

5    regarding the suitability of the 2014 was "manifestly unreasonable." *See Alliance Mortgage Co., v.*

6    *Rothwell*, 10 Cal.4th 1226, 1239 (1995). As a result, Valley Protein cannot establish that it justifiably

7    relied on a misrepresentation of fact by Linde regarding the 2014 Freezer.

8                    **3.    Valley Protein's Fraud-Based Counterclaims are Barred by the Economic**

9                            **Loss Rule.**

10            Valley Protein's fraud-based counterclaims fail for the additional reason that its grievance is

11    more appropriately handled in the context of a breach of contract claim. Subject to certain exceptions

12    not applicable in this case, the economic loss rule bars tort claims for contract breaches, thereby

13    limiting contracting parties to contract damages. *See Aas v. Superior Court*, 24 Cal.4th 627, 643

14    (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate

15    contractual obligations."). The rule is intended to "prevent[] the law of contract and the law of tort

16    from dissolving into one another." *Robinson Helicopter Co., Inc. v. Dana Corp*., 34 Cal.4th 979, 988

17    (2004). Because Valley Protein's intentional and negligent misrepresentation counterclaims are

18    essentially premised on Linde's purported breaches of the 2011 Agreement and 2014 Agreement,

19    they are barred by the economic loss rule.

20    **I.    LINDE IS ENTITLED TO SUMMARY JUDGMENT ON VALLEY**

21            **PROTEIN'S COUNTERCLAIM FOR INJUNCTIVE RELIEF AND**

22            **RESTITUTION PURSUANT TO CALIFORNIA BUSINESS AND**

23            **PROFESSIONS CODE SECTIONS 17200, *ET SEQ*.**

24            California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.,

25    prohibits any unlawful, unfair or fraudulent business act or practice. When analyzing a UCL claim,

26    courts consider each of the three prongs to determine whether a practice is unlawful, unfair, or

27    fraudulent. *Cel–Tech Comms., Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, 180

28    (1999). While the scope of the conduct covered by the UCL is broad, the remedies are limited.

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 812 (2007). Damages cannot be recovered, and a plaintiff is generally limited to injunctive relief and restitution. *Id.*

### 1.     The Counterclaim is Time-Barred.

A claim under the UCL is subject to a four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208.  Therefore, to the extent that this counterclaim is premised on Linde's conduct that occurred more than four years before the action was filed (*e.g.*, purported misrepresentations prior the parties entering into the 2011 Agreement and any alleged failure to provide the requisite freezing equipment under the 2011 Agreement), it is barred by the statute of limitations.

### 2.     No Unlawful, Unfair, or Fraudulent Conduct.

A violation of another law is a predicate for stating a cause of action under the UCL's "unlawful" prong. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1554 (2007). A claim for violation of the UCL stands or falls depending on the fate of antecedent substantive causes of action. *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178 (2001). "Unfair" conduct has been defined as conduct that "offends an established public policy or…is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 939 (2003) (citation and internal quotations omitted). A UCL claim based on public policy must be "tethered" to a specific constitutional, statutory or regulatory provision to provide an objective basis for determining whether the alleged conduct is unfair. *Id.* at 940.

Finally, to establish liability under the "fraudulent" prong of the UCL, a plaintiff must demonstrate that the offending conduct is likely to deceive members of the public. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 838 (2006). The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer. *See Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 507 (2003). When allegations of fraud under Section 17200 are made against corporate defendants, the "requirements of specificity…requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991) (describing pleading standard for claims grounded in fraud).

1    Valley Protein's counterclaim for a violation of the UCL fails simply because it has not

2    established a viable antecedent claim. As discussed herein, every one of Valley Protein's

3    counterclaims is legally and factually deficient. Absent a viable antecedent claim, Valley Protein

4    cannot establish a separate claim under the unlawful prong of the UCL. Nor can it identify any

5    "constitutional, statutory or regulatory provision" to which to relate a claim under the "unfair"

6    prong. *See Scripps Clinic*, 108 Cal.App.4th at 940. Valley Protein likewise fails to establish that

7    Linde's conduct was immoral, unethical, oppressive, unscrupulous or substantially injurious to

8    consumers. Moreover, Valley Protein cannot establish that Linde made a misrepresentation as

9    explained above or that the representation was likely to deceive the public.

10                          **3.    No Entitlement to Any Remedy.**

11    Finally, Valley Protein cannot establish that it is entitled to any remedy under the UCL.  In a

12    private unfair competition law action, the remedies are generally limited to injunctive relief and

13    restitution. Damages, including punitive damages and increased or enhanced damages are not

14    recoverable under the UCL. *Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 807

15    (E.D. Cal. 2017).

16    As a preliminary matter, Valley Protein is not entitled to seek injunctive relief against Linde

17    in federal court. A plaintiff or counter-claimant in federal court must have standing for each form of

18    relief sought, as to both federal and state law claims. *Cleveland v. Groceryworks.com, LLC,* 200 F.

19    Supp. 3d 924, 961–62 (N.D. Cal. 2016). This includes actions brought in federal court under the

20    California UCL. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir.2001) (affirming the

21    trial court's ruling that the plaintiff lacked Article III standing who did not suffer individualized

22    injury, despite having viable state court action under UCL). In order to have standing to seek an

23    injunction in federal court, a plaintiff "must demonstrate that he has suffered or is threatened with a

24    particularized legal harm coupled with a sufficient likelihood that he will again be wronged in a

25    similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

26    It is undisputed that Valley Protein no longer purchases CO2 from Linde, is not engaged in

27    any other business relations with Linde, and is not otherwise affiliated in any way with Linde apart

28    from the present lawsuit. Valley Protein has not identified any evidence that it faces a "real and

24

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    immediate threat of repeated injury" from Linde's business practices. *See id.* at 985–86; *Balasanyan*

2    *v. Nordstrom, Inc.*, 294 F.R.D. 550, 562 (S.D.Cal. 2013). Valley Protein therefore lacks standing to

3    pursue prospective injunctive relief against Linde. *See Bates*, 511 F.3d at 985–86.

4          As to restitution, the UCL permits courts to "make such orders or judgments...as may be

5    necessary to restore to any person in interest any money or property, real or personal, which may

6    have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. The

7    California Supreme Court has defined an order for such restitution as an order "compelling a UCL

8    defendant to return money obtained through an unfair business practice to those persons in interest

9    from whom the property was taken." *Cleveland*, 200 F. Supp. 3d  at 962.

10          "The object of restitution is to restore the status quo by returning to the plaintiff funds in

11    which he or she has an ownership interest." *Id.* "[I]n the UCL context ... restitution means the return

12    of money to those persons from whom it was taken or who had an ownership interest in it." *Daniels*

13    *v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1187 (2016) (citing *Feitelberg v. Credit*

14    *Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1013 (2005). The "notion of restoring something to

15    a victim of unfair competition includes two separate components. The offending party must have

16    obtained something to which it was not entitled *and* the victim must have given up something which

17    he or she was entitled to keep." *Id.*

18          Simply stated, Valley Protein has not alleged and cannot establish that Linde has obtained

19    money from Valley Protein to which it was not entitled, nor has it established that it gave up money

20    that it was otherwise entitled to keep. Consequently, Valley Protein's counterclaim under the UCL

21    necessarily fails.

22    **V.**      **CONCLUSION**

23          For the reasons set forth herein, Linde is entitled to summary judgment on all of its claims

24    against Valley Protein and all counterclaims alleged against it by Valley Protein.

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

1172363.1

1    DATED:  August 7, 2018                    **McGLINCHEY STAFFORD**

2

3                                             By: _/s/ Adam S. Hamburg_
                                                 ADAM S. HAMBURG
                                                 CHRISTOPHER BOTTCHER
4                                                Attorneys for Plaintiff **LINDE, LLC**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**
1172363.1

**PROOF OF SERVICE**

1

2    **STATE OF CALIFORNIA**    )
                                )    **ss.**
3    **COUNTY OF ORANGE**       )

4    I, Marina Hegel, declare:

5    I am employed in the County of Orange, State of California. I am over the age of 18 and not a party
     to the within action. My business address is 18201 Von Karman Ave., Suite 350, Irvine, California
6    92612.

7    On August 7, 2018, I served the document(s) described as **PLAINTIFF AND COUNTER-
     DEFENDANT LINDE LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY
8    JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT;
     MEMORANDUM OF POINTS AND AUTHORITIES** as follows:
9

10   ☐    **BY MAIL**: As follows:

11          ☐    **FEDERAL** – I deposited such envelope in the U.S. mail at Irvine, California, with
                 postage thereon fully prepaid,

12   ☐    **BY FACSIMILE:** I caused such documents to be transmitted to the telephone number of the
          addressee listed on the attached service list, by use of facsimile machine telephone number.
13        The facsimile machine used complied with California Rules of Court, Rule 2004 and no error
          was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), a
14        transmission record of the transmission was printed.

15   ☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be
          served by means of this Court's Electronic transmission of the Notice of Electronic Filing
16        through the Court's transmission facilities, to the parties and/or counsel who are registered
          CM/ECF users set forth in the service list obtained from this Court. Pursuant to Electronic
17        Filing Court Order, I hereby certify that the above documents(s) was uploaded to the website
          and will be posted on the website by the close of the next business day and the webmaster
18        will give e-mail notification to all parties.

19   ☐    **BY EMAIL SERVICE** as follows: By email or electronic transmission: Based on any
          agreement between the parties and/or as a courtesy, I sent the document(s) to the person(s) at
20        the email address(es) listed on the service list. I did not receive, within a reasonable time
          after the transmission, any electronic message or other indication that the transmission was
21        unsuccessful.

22   ☒    **FEDERAL:** I declare that I am employed in the office of a member of the State Bar of this
          Court at whose direction the service was made.
23

24   Executed on August 7, 2018, at Irvine, California.

25

26                                                       Marina Hegel

27

28

674783.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
**USDC, Eastern District of California Case No. 1:16-cv-00527-DAD-EPG**
**LINDE, LLC v VALLEY PROTEIN, LLC**
**File # 103174.0015**

Russell K. Ryan, Esq.
MOTSCHIEDLER, MICHAELIDES, WISHON,
BREWER & RYAN, LLP
1690 W. Shaw Ave., Suite 200
Fresno, CA  93711

Attorneys for Defendant **VALLEY PROTEIN,
LLC**

Tel.:  (559) 439-4000
Fax:  (559) 439-5654
Email:  rkr@mmwbr.com
        crystal@mmwbr.com

674783.1